Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Michael J. Ellis
Assistant United States Attorney
Post Office Box 1494
Spokane, Washington 99210-1494
(509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARCIANO MUNOZ-DE LA O,<br><br>Defendant. | Case No. 2:20-CR-00134-RMP<br><br>GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS |

*United States v. Carrillo-Lopez*, __F. Supp. 3d__, 2021 WL 3667330 (D. Nev. Aug 18, 2021), and the decision's application of *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), continues to be rejected by district courts across the country, with five joining the chorus since briefing was initially filed in September.[1] As noted in *Suquilanda*, *Carrillo-Lopez* "appears to be somewhat of an outlier, as the Government correctly points out the vast

---

[1] *United States v. Suquilanda*, No. 21 CR63 (VM), 2021 WL 4895956 (S.D.N.Y. Oct. 20, 2021); *United States v. Samuels-Baldayaquez*, No. 4:20 CR 83, 2021 WL 5166488, (N.D. Ohio Nov. 5, 2021); *United States v. Amador-Bonilla*, No. CR-21-187-C, 2021 WL 5349103 (W.D. Ok. Nov. 16, 2021); *United States v. Rivera-Sereno*, No. 2:21-cr-129, 2021 WL 5630728 (S.D. Ohio Dec. 1, 2021); *United States v. Sanchez-Felix*, No. 21-cr-00310-PAB, 2021 WL 6125407 (D. Colo. Dec. 28, 2021).

GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS- 1

majority of courts that have considered this exact issue have upheld Section 1326." *See Suquilanda*, 2021 WL 4895956, at *5. The Defendant, attempting to demonstrate that the many reenactments of 8 U.S.C. § 1326 were infected with racial bias, instead presents a series of congressional mini-biographies and asks this Court to infer that the hundreds of unnamed and unanalyzed senators and representatives who also voted affirmatively must have been similarly motivated. This approach underscores the weakness of the Defendant's argument – failing to find evidence that the vast majority of the vast majorities of Congress that voted to enact each version of § 1326 were motivated by racial bias, the Defendant seeks to muddy the water with a series of red herrings, covering everything from asylum policy to legislative proposals never enacted into law. This Court should follow its many sister courts, reject *Carrillo-Lopez* and the Defendant's equal protection argument, and deny the Defendant's Motion to Dismiss.

### I. The Defendant incorrectly accuses the Government of attempted to strip away his ability to challenge § 1326.

The Defendant charges the Government with attempting to "change the rules" in order to strip the Defendant of "the right to challenge the law he is alleged to have violated." *See* ECF No. 78 at 4, 8. Not so – while the Defendant may raise an Equal Protection challenge, the Defendant is not free to select his preferred standard of review. As many courts have recognized, "Congress has expansive authority over immigration affairs, and its actions in this area are 'largely immune from judicial control.'" *See Samuels-Baldayaquez*, 2021 WL 5166488, at *2 (quoting *Fiallo v. Bell*,

GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS- 2

430 U.S. 787, 792 (1977)); *see also Rivera-Sereno*, 2021 WL 5630728, at *4; *Amador-Bonilla*, 2021 WL 5349103, at *1. While the Supreme Court has crafted carve-outs to rational basis review of Congress's immigration legislation, *see Dent v. Sessions*, 900 F.3d 1075, 1081 (9th Cir. 2018) (noting that, under *Sessions v. Morales-Santana*, __U.S.__, 137 S. Ct. 1678 (2017), heightened review of the petitioner's equal protection claim related to citizenship was not foreclosed "simply because [the claim] is in the immigration context"), the Defendant cannot point to a similar decision permitting heightened review of a criminal law directly related to the admission and removal of noncitizens. Further, equal protection challenges to criminal statutes have previously been reviewed for a rational basis, undercutting the Defendant's argument that criminal laws receive *de facto* enhanced scrutiny. *See United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091–92 (9th Cir. 2007) (applying rational basis review to equal protection challenge to sentencing guideline); *United States v. Lopez-Flores*, 63 F.3d 1468, 1471–75 (9th Cir. 1995) (applying rational basis review to alienage classification in Hostage Taking Act, 18 U.S.C. § 1203). The Defendant's challenge – as with numerous prior equal protection challenges to immigration legislation – is therefore examined under rational basis review.

## II.  The Defendant misreads *United States v. Rizo-Rizo*, 16 F.4th 1292 (9th Cir. 2021).

The Defendant cites *Rizo-Rizo* as support for the idea that § 1326, first enacted in 1952, must have the same meaning as the precursor statute included in the 1929 Act. *See* ECF No. 78 at 11–12. In *Rizo-Rizo*, the court was attempting to determine

GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS- 3

whether 8 U.S.C. § 1325 constituted a "regulatory offense," as § 1326 had previously been determined. *See Rizo-Rizo*, 16 F.4th at 1297–98. Noting that "[w]e could conceivably find such [a compelling reason to distinguish § 1325 from § 1326] if the legislative history of § 1325 were sufficiently different," the court found that both the 1929 and 1952 Acts had enacted the relevant unlawful entry and reentry legislation simultaneously. *See id.* at 1298. Thus the Defendant's quotation summarizing *United States v. Nishiie*, 996 F.3d 1013 (9th Cir. 2021) – that "when statutes are enacted shortly after one another and address the same subject and use similar language, that demonstrates Congress's intent that they have the same meaning," *see* ECF No. 78 at 11 – refers to the court considering the statutes passed in 1929 and then those passed in 1952, and is not a directive to compare the 1929 and 1952 statutes with one another.[2] While the Government does not dispute that the 1929 Act contained a precursor version of criminal reentry, *see* ECF No. 64 at 15–16, the Defendant is charged with violating § 1326, meaning that any analysis of the Defendant's equal protection claim begins in 1952. *See Amador-Bonilla*, 2021 WL 5349103, at *2 ("The primary flaw in Defendant's argument is his focus on the 1929 Act. As Plaintiff notes, the first step in applying *Arlington Heights* is to identify what decision maker and decision is being reviewed. When that analysis is undertaken it is clear that Plaintiff is

---

[2] It further detracts from the Defendant's interpretation of *Rizo-Rizo* that twenty-three years passed between 1929 and 1952, a passage of time that would render the phrase "enacted shortly after one another" meaningless.

GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS- 4

correct in noting that the Court's review should focus on the Immigration and Nationality Act of 1952.").

### III. The Defendant's attempt to ascribe the supposed motives of single legislators to all those who ultimately voted to enact legislation should be rejected.

The inquiry under *Arlington Heights* examines "whether invidious discriminatory purpose was a motivating factor" in the legislative or administrative action. *See Arlington Heights*, 429 U.S. at 266. Despite the focus on the *legislature's* intent when passing a given bill, the Defendant instead highlights a small number of *legislators* per enactment of § 1326 – Senator McCarran,[3] Senator Chiles,[4] Senator Graham,[5] Representative McCollum,[6] Representative Foley,[7] Representative Solomon,[8] and Representative Smith.[9] As acknowledged by Dr. Kang, these statutes were often enacted by wide margins – for example, 346-11 in the House of Representatives for the ADAA and 91-8 in the Senate for AEDPA. *See* ECF No. 78-2 at 50, 87. The various amendments to § 1326 appear to have been relatively uncontroversial. *See id.* at 86 (noting that "none objected to its proposal to add the

---

[3] The Immigration and Naturalization Act of 1952.
[4] The Anti-Drug Abuse Act of 1988 (hereinafter the "ADAA").
[5] The Immigration Act of 1990.
[6] The Violent Crime Control and Law Enforcement Act of 1994 (hereinafter the "VCCLEA").
[7] The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter the "AEDPA").
[8] AEDPA.
[9] AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (hereinafter the "IIRIRA").

GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS- 5

new language to § 1326"), 92 (noting that while the IIRIRA "was repeatedly characterized as mean-spirited and racist," "the change to § 1326 stirred no debate in Congress"); *see also United States v. Ortiz-Martinez*, 557 F.2d 214, 216 (9th Cir. 1977) ("An exhaustive reading of the congressional debate indicates that Congress was deeply concerned with many facets of the Immigration and Nationality Act of June 27, 1952, but §§ 1325 and 1326 were not among the debated sections."). The views of one legislator – roughly the average presented by the Defendant per reenactment of § 1326 – cannot be ascribed to the entire legislature.

Further, much of the Defendant's historical background information has nothing to do with the legislative history of § 1326 or unlawful reentry. For example, the Defendant discusses Representative McCollum and his motives underlying the § 1326 amendment contained within the VCCLEA without mentioning that McCollum *ultimately voted against the legislation*. *See* ECF No. 78 at 29–30; ECF No. 78-2 at 80; *see also N. L. R. B. v. Fruit & Vegetable Packers & Warehousemen, Loc. 760*, 377 U.S. 58, 66 (1964) ("[W]e have often cautioned against the danger, when interpreting a statute, of reliance upon the views of its legislative opponents. In their zeal to defeat a bill, they understandably tend to overstate its reach."). The views of a legislator who voted *against* legislation have no bearing on the motives of the majority who voted *for* the same bill. Statements from non-legislators – and often opponents of the legislation under consideration – are similarly meaningless when evaluating legislative intent. *See* ECF No. 78-2 at 46–48 (statement from ACLU

GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS- 6

associate director), 85 (statement from constituent); *see also Fruit & Vegetable Packers & Warehousemen*, 377 U.S. at 66.

  Dr. Kang's affidavit suffers from similar flaws – while dedicating many pages to general immigration issues throughout the twentieth century, Dr. Kang offers specific insight into the motives of individual legislators justifying the criminalization of reentry only once:[10] Senator Chiles' rationale supporting enhanced penalties for unlawful reentry as part of the ADAA. *See* ECF No. 78-2 at 44–46. As an individual congressman does not pass a law, Dr. Kang is incorrect when claiming that "[i]t was in this xenophobic context that members of Florida's congressional delegation amended 8 U.S.C. § 1326 in 1988, 1990, 1994, and 1996." *See id.* at 34. The senators and representatives profiled by Dr. Kang may have drafted and advocated for the various reenactments, but it took a majority of their fellow congressman – hundreds on each occasion – to ratify those measures into law. The absence of evidence concerning the motives of these hundreds of unnamed politicians substantially undercuts the Defendant's claim that each reenactment of § 1326 was motivated by racial bias – the Court cannot simply assume that the majority shared the claimed discriminatory motives of the few examined by Dr. Kang.

  Dr. Kang notes the legislature's silence concerning reentry on multiple occasions. *See id.* at 21 ("In this context, Congress remained largely silent with

---

[10] As noted above, the Court should disregard Dr. Kang's discussion of Representative McCollum in regards to the VCCLEA as McCollum ultimately voted against the legislation.

GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS- 7

respect to the recodification of the criminal entry and re-entry provisions of the immigration laws in the 1952 Act."), 51 (noting that "the legislative history of the 1990 amendment to 8 U.S.C. § 1326 is very thin"), 85 ("While a few congressmen raised objections to other provisions of HR 668, none challenged the additions to § 1326."). While the Defendant attempts to twist this silence into Congress's failure to fulfil its nonexistent duty to cleanse prior legislation of insidious origins, the Defendant cannot escape the reality that the presented evidence does not justify a finding that the legislators who enacted the various versions of § 1326 were motivated by racial bias when criminalizing unlawful reentry.

    The Defendant and Dr. Kang also repeatedly raise Congress's efforts to increase the penalty for unlawful reentry – without establishing a link between the amendments and racial animus and often providing a reasonable alternative justification for the change. *See id.* at 21 (noting that the 1952 Act made it easier to prosecute unlawful reentry where the defendant is "found in" the United States thus both alleviated proof concerns about determining a defendant's entry point into the United States and preserving government resources). Section 1326 – "a necessary piece of the immigration-regulation framework" – primarily serves the purpose of deterrence, a goal furthered through heightened penalties for more serious offenders. *See United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1078 (9th Cir. 1998). The statute cannot simultaneously validly and invalidly deter continued violations of immigration law.

GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS- 8

Overall, the Defendant and Dr. Kang present little evidence regarding unlawful reentry and § 1326. Instead, both focus on other aspects of immigration law – such as asylum, refugee policy, admission quotas, and removal proceedings – and attempt to paint unlawful reentry with the same brush. Ultimately, however, the scant legislative history specifically concerning § 1326 fatally undermines the Defendant's claim. The Defendant, in order to succeed in his challenge to § 1326, must present evidence that § 1326, and not general immigration policy or other aspects of immigration law, was motivated by racial bias. The Defendant, having presented no evidence that the hundreds of unnamed senators and representatives who voted – over the course of fifty years – to criminalize unlawful reentry were motivated by racial bias when casted their votes, has simply failed to do so. One legislator's motive cannot be ascribed – without evidence – to the many others who voted the same way.

Dated: January 5, 2022.

Vanessa R. Waldref
United States Attorney

*s/Michael J. Ellis*
Michael J. Ellis
Assistant United States Attorney

GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS- 9

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: J. Houston Goddard

*s/ Michael J. Ellis*
Michael J. Ellis
Assistant United States Attorney

GOVERNMENT'S SUR-REPLY TO MOTION TO DISMISS- 10